ORDER (1) DENYING PLAINTIFF’S MOTION FOR ENTRY OF DEFAULT JUDGMENT [105-1]; (2) GRANTING DEFENDANT’S MOTION TO DISMISS [109-1]; (3) DENYING DEFENDANT’S REQUEST FOR JUDICIAL NOTICE [111-1]; (4) DENYING PLAINTIFF’S REQUEST FOR JUDICIAL NOTICE [126-1] AND [128-1]; and (5) DISMISSING PLAINTIFF’S SECOND AMENDED COMPLAINT
 

 STIVEN, United States Magistrate Judge.
 

 I. INTRODUCTION
 

 Before this Court is (1) Plaintiffs motion for default judgment, (2) Defendant’s motion for involuntary dismissal, and (3) judicial notice requests presented by both parties. Plaintiff also notified this Court that he intended to call defense counsel, Daniel Pascucci, as a witness during the oral argument hearing on these motions. This Court held oral argument on both motions
 
 *MCCCLVII
 
 on March 11, 2004 at 9:00 a.m. and took the motions under submission. During the hearing, Plaintiff withdrew his intent to call Mr. Pascucci as a witness.
 

 For the reasons stated herein, this Court (1) DENIES Plaintiffs motion for entry of default judgment [105-1], (2) GRANTS Defendant’s motion to dismiss [109-1], (3) DENIES Defendant’s request for judicial notice [111-1], and (4) DENIES Plaintiffs request for judicial notice [126-1] and [128-1]. Plaintiffs Second Amended Complaint [103-1] is DISMISSED for lack of subject matter jurisdiction.
 

 II. BACKGROUND
 

 Plaintiff is an individual, proceeding pro
 
 se,
 
 and originally filed this complaint as an adversary proceeding in a bankruptcy case. The instant case arises from a dispute between Plaintiff and Sprint PCS regarding Sprint PCS’s Equipment Replacement Program. Plaintiff purchased a wireless phone and began participating in the Program for a fee of $4 per month on or about December 16, 2000. Plaintiff alleges that, despite his payment of necessary fees to Sprint, Sprint customer service agents refused to replace his phone after it was damaged. Plaintiff exchanged the phone with the dealer under the dealer’s ninety-day exchange policy, paid an activation fee of $29.99 to activate the second phone, and demanded reimbursement from Sprint. Plaintiff alleges that six months later, the desktop battery charger for his phone became damaged. Plaintiff believed the charger was also covered under the warranty, but Sprint refused to replace it. Plaintiff purchased another desktop charger for $39.74.
 

 Plaintiff alleged thirteen counts in the First Amended Complaint, including the Lanham Act, fraud, false advertising, concealment, warranty law violations, California Insurance Code violations, failure to settle, malice and oppression, and RICO. Plaintiff sought as damages $73,170 in compensatory damages, including pain and suffering and recovery of his cost for increased medication, and no less than $2.25 million in punitive damages.
 

 Plaintiff filed a motion for summary judgment on January 24, 2002, together with motions for leave to join parties and for leave to file a first amended complaint. On February 19, 2002, Plaintiff filed a motion for entry of default judgment. An order by District Judge Napoleon A. Jones, Jr. was filed on March 26, 2002, denying plaintiffs motion for leave to file an amended complaint,
 
 [1]
 
 denying the motion for summary judgment as moot, denying plaintiffs motion for default judgment against Sprint PCS, denying plaintiffs motion for leave to join parties, and dismissing Sprint Spectrum, L.P. from the action, based on voluntary dismissal by Plaintiff.
 
 [2]
 
 On May 23, 2002, Plaintiff filed a motion for an emergency temporary restraining order; the District Court denied Plaintiffs motion on May 28, 2002.
 

 On June 25, 2002, the District Court filed an order clarifying the status of Sprint Corporation. Plaintiffs original complaint was alleged against “Sprint PCS,” “Sprint Corporation,” and “Cox Communication PCS, L.P.” However, because none of those defendants had any connection to Plaintiffs claims, Sprint Spectrum answered the complaint, asserting itself as a Defendant on behalf of and
 
 *MCCCLVIII
 
 in place of “the erroneously named” Sprint Corporation. Although Plaintiff voluntarily dismissed Sprint Spectrum, the Court found that this dismissal did not affect the status of Sprint Corporation as a party to this action.
 

 Plaintiff again filed a motion for leave to file an amended complaint on June 27, 2002. On September 4, 2002, Magistrate Judge James F. Stiven issued an order accepting the first amended complaint. On December 10, 2002, Judge Jones signed a stipulation and consent/order of reference, permitting the instant case to proceed before Magistrate Judge Stiven pursuant to 28 U.S.C. § 636(c). On December 11, 2002, Judge Jones denied as moot Plaintiffs motion for reconsideration of the motion to join parties, Plaintiffs motion for modification of the June 25, 2002 order, Plaintiffs motion for an order entering default judgment, Plaintiffs motion for entry of default judgment on claim 1, and Plaintiffs motion for bifurcation of claim 2.
 

 On September 10, 2002, Defendant Sprint Corporation filed a motion to dismiss the first amended complaint for lack of personal jurisdiction. That same day, Defendant Sprint PCS filed a motion to dismiss the first amended complaint for failure to state a claim and to strike. On December 12, 2002, Plaintiff filed a request for judicial notice of certain facts, cases, statements and admissions, findings, and public records.
 

 On September 18, 2003, Judge Stiven granted Defendant Sprint Corporation’s motion to dismiss for lack of personal jurisdiction, granted, in part, Defendant Sprint PCS’s motion to dismiss for failure to state a claim, denied Defendant Sprint PCS’s motion to strike, denied, in part, Plaintiffs motion to take judicial notice, and granted Plaintiff leave to file a second amended complaint (“SAC”). However, any such SAC was to be filed in accordance with the findings of the September 18 Order. Plaintiff was to file any SAC by October 20, 2003.
 

 A telephonic status conference was held in chambers on November 4, 2003, at which point no such SAC had been filed. Plaintiff subsequently filed a motion for leave to file a SAC on November 10, 2003. This Court’s Order of December 5, 2003 granted Plaintiff leave to file a SAC no later than January 12, 2004. This Court also ordered that any SAC filed must conform to the findings of this Court’s Order of September 18, 2003 and notified Plaintiff that this Court will dismiss, on its own motion, any claims asserted which have already been dismissed or as to which the Court lacks jurisdiction. Plaintiff filed his SAC on January 12, 2004.
 

 On February 4, 2004, Plaintiff filed a motion for default judgment, filed nunc pro tunc to February 2, 2004, along with a notice of intent to call Daniel Pascucci as a witness during the hearing on March 11, 2004. On February 4, 2004, Defendant filed a motion to dismiss, filed nunc pro tunc to February 2, 2004, along with a motion to strike and request for judicial notice. Both parties filed timely oppositions. This Court held oral argument on the motions on March 11, 2004 at 9:00 a.m.
 

 II. SECOND AMENDED COMPLAINT
 

 This Court’s Order of September 18, 2003 (“Order”)
 
 sua sponte
 
 granted Plaintiff leave to amend but warned Plaintiff that any SAC must comply with the September 18 Order. The Order granted Defendant Sprint Corporation’s Rule 12(b)(6) motion to dismiss for lack of personal jurisdiction, finding both no basis for personal jurisdiction over Sprint Corporation and that Sprint PCS is not the alter ego of Sprint Corporation. Order at 8-22. As Sprint Spectrum L.P. has previously been dismissed by Plaintiff, the
 
 only
 
 remaining
 
 *MCCCLIX
 
 Defendant is Sprint PCS, which Defendant attests is correctly referred to as Sprint Telephony P.C.S. L.P. dba Sprint PCS (“Sprint PCS”).
 

 This Court also granted, in part, Defendant Sprint PCS’s Rule 12(b)(6) motion to dismiss for failure to state a claim. This Court dismissed,
 
 with
 
 prejudice, Plaintiffs allegations under the Lanham Act, Consumer Legal Remedies Act under Cal. Civ. Code § 1770, California Insurance Code § 790 (Unfair Practices Act), and RICO.
 
 Id.
 
 at 22-28, 32-35, and 36-40. This Court dismissed,
 
 without
 
 prejudice, Plaintiffs allegations under the Song-Beverly Consumer Warranty Act (“Song-Beverly Act”), punitive damages claim, and fraud claims.
 
 Id.
 
 29-32, 35-36. This Court also denied Defendant Sprint PCS’s motion to strike the portion of Plaintiffs first amended complaint which sought recovery for mental and physical pain and suffering in the sum of $75,000, without prejudice, finding that such a claim may be appropriate if a valid tort cause of action could be maintained.
 
 Id.
 
 at 40-41.
 

 In addition to these findings, this Court granted Plaintiff leave to amend, provided Plaintiff follow the specific instructions given regarding any SAC filed. As to the Song-Beverly Act claim, this Court directed Plaintiff that if he were to include such a claim in his SAC, Plaintiff was to “specifically plead what specific requirements of § 1794.4 or other provisions of the Song-Beverly Act were not complied with and what damages were suffered by such omissions.”
 
 Id.
 
 at 36, lines 3-5. As to Plaintiffs claim for punitive damages, this Court instructed Plaintiff that any further pursuit of punitive damages must be based on claims in tort, not an alleged breach of a service plan contract.
 
 Id.
 
 at 36, lines 10-22. Furthermore, this Court warned Plaintiff that he “is not eligible for punitive damages unless the underlying claims for fraud, oppression, or malice are proven by clear and convincing evidence.”
 
 Id.
 
 at lines 15-16. As to Plaintiffs fraud allegations, this Court instructed Plaintiff that “any such SAC may only assert claims against Sprint PCS (more properly Sprint Telephony PCS, LP dba Sprint PCS) and shall be limited to claims arising out of the Plaintiffs existing claims for fraud (based on common law or Cal. Civ.Code § 1709 only).”
 
 Id.
 
 at 32, lines 11-15.
 

 This Court’s Order of December 5, 2003, re-iterated the warning that any SAC filed by Plaintiff must comply with the September 18 Order. The Court further warned Plaintiff that “the Court will dismiss, on its own motion, any claims asserted which have already been dismissed or as to which the Court lacks jurisdiction.” December 5, 2003 Minute Order.
 

 III. PLAINTIFF’S MOTION FOR DEFAULT JUDGMENT
 

 Plaintiff moves this Court for entry of default judgment against Defendant, pursuant to FRCP 55(b)(2), in the sum of $75,000, actual damages in the sum of $450.80, costs, and consulting attorney’s fees.
 
 [3]
 
 Plaintiff states that he served Defendant with the SAC by placing it into the custody of the U.S. Postal Service, postage prepaid, on January 9, 2004. Following the tracking number on the package, Plaintiff states that the SAC was delivered to Defendant on January 12, 2004. Plaintiff states that on January 31, 2004 he requested an entry of default against Defendant from the Clerk of the Court.
 

 Plaintiff argues that Defendant failed to respond to his SAC within the 10 day time period provided by FRCP 15(a). Rule 15(a) provides: “A party shall plead in
 
 *MCCCLX
 
 response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.” Defendant argues that it was not required to file a responsive pleading to the SAC, referencing
 
 Artis T. Ore, Inc. v. Hawkins,
 
 1995 WL 133637, 1995 U.S. Dist. Lexis 3936 (E.D.Pa.1995) (“Since the filing of the amended complaint was without leave of court, it did not trigger Rule 15’s response requirement.”)
 

 This Court granted Plaintiff
 
 limited
 
 leave to file a second amended complaint to allege fraud under either the common law or Cal. Civ.Code § 1709. The first sentence of the opening paragraph of Plaintiffs SAC states: “Plaintiff brings this case as an action in breach of contract on his own behalf, and as private Attorney General under § 17200 [Cal. Bus.
 
 &
 
 Prof. Code], for violation of § 17500 [Cal. Bus. & Prof.Code].” SAC at 1. Plaintiff continues in the second sentence of the opening paragraph and “reserves the right to sue in tort, for bad faith refusal to settle insurance claims, and for punitive damages.”
 
 Id.
 
 at 1. Despite Plaintiffs argument to the contrary
 
 [4]
 
 , a plain reading of the SAC, alleges new causes of action, rather than amendments to the previous causes of action as permitted by the Order.
 

 Though the Ninth Circuit has not addressed this issue, the logic of the ruling in
 
 Artis T. Ore, Inc.
 
 is in line with U.S. Supreme Court precedent. For example, an amended complaint which presents a “new or different cause of action ... is the equivalent of a new suit.”
 
 Seaboard Air Line Ry. v. Renn,
 
 241 U.S. 290, 293-94, 36 S.Ct. 567, 60 L.Ed. 1006 (1916). Furthermore, requiring a defendant to respond within 10 days of service of an amended complaint which contains new causes of action does not coincide with considerable importance the federal rules place on notice being provided to Defendant.
 
 See Percy v. San Francisco General Hospital,
 
 841 F.2d 975, 980 (9th Cir.1988). Thus, this Court finds it reasonable that Defendant regarded the SAC as alleging new causes of action without leave of court, which would not trigger the 10 day response time required by Rule 15.
 

 However, this Court need not make a ruling on this issue as an entry of default judgment against Defendant is inappropriate here on other grounds. The section of the rule regarding default is dealt with in Rule 55(a), and the section of the rule regarding judgment is dealt with in Rule 55(b). These sections have separate headings and procedures that are distinct from one another. Thus, a plain reading of Rule 55 demonstrates that entry of default by the clerk is a prerequisite to an entry of default judgment. Here, Plaintiff failed to provide this Court with proof of an actual entry of default by the clerk nor does this Court’s docket reflect that a default was entered against Defendant. Plaintiff states that he attempted to obtain an entry of default against Defendant via a letter dated January 31, 2004 addressed to the clerk of the court, however, at the hearing on March 11, Plaintiff stated that letter had been rejected by the clerk and returned to Plaintiff. Thus, Plaintiff failed to complete the first part of the two-part process, and a default has not been entered against Defendant.
 
 [5]
 

 Furthermore, even if a default was entered against Defendant, a default judgment is disfavored. “Whenever it is rea
 
 *MCCCLXI
 
 sonably possible, cases should be decided upon their merits.”
 
 See Patapoff v. Vollstedt’s, Inc.,
 
 267 F.2d 863, 865 (9th Cir.1959). As such, any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment.
 
 Pena v. Seguros La Comercial, S.A.,
 
 770 F.2d 811, 814 (9th Cir.1985). Furthermore, the clerk could not enter default here because Defendant has appeared and is actively defending this case. Rule 55(a) instructs a clerk to enter default against a party whom has “failed to plead or otherwise defend.” Defendant is actively involved in this case, as is shown by the motion to dismiss at issue here. Thus, this Court DENIES Plaintiffs motion for a default judgment against Defendant.
 

 III. DEFENDANT’S MOTION TO DISMISS
 

 Defendant moves this Court to dismiss and to strike the second amended complaint based on several arguments detailed below.
 

 A. Dismissal of Action Pursuant to FRCP 41(b)
 

 Defendant moves this Court to dismiss this entire action pursuant to FRCP 41(b), which provides that a defendant may move for dismissal “for failure of the plaintiff to prosecute or to comply with these rules or any order of court.” While Defendant acknowledges the valuable policy of leniency afforded to pro se litigants, Defendant now seeks this Court’s recognition that Plaintiffs conduct exceeds the limits of judicial tolerance and that twenty-nine months, two district courts, one bankruptcy court, dozens of motions, and extensive legal expenses are an abuse of the policy of leniency. Defendant argues that Plaintiff is exploiting his pro se status.
 

 Federal courts, including the Ninth Circuit, recognize the important goals served by lenient treatment of pro se litigants must necessarily yield to prejudice suffered by the courts and other parties.
 
 See e.g., Ferdik v. Bonzelet,
 
 963 F.2d 1258 (9th Cir.1992) (district court did not abuse its discretion in dismissing a pro se Plaintiffs case following Plaintiffs failure to comply with the filing deadline of his second amended complaint because the court provided extensive guidance, gave Plaintiff two opportunities to amend his complaint, and the case had dragged on for over a year and a half, consuming large amounts of the court’s valuable time that it could have devoted to other major and serious criminal and civil cases on its docket).
 

 This Court finds little difference in the facts which supported a dismissal pursuant to 41(b) in the
 
 Ferdik
 
 case and the facts of the instant case. Like the pro se plaintiff in
 
 Ferdik,
 
 Plaintiff here failed to comply with the filing deadline of his SAC, even though this Court initially granted Plaintiff approximately four weeks within which to file his SAC. Though the Ninth Circuit would have likely agreed with a 41(b) dismissal for that failure, this Court granted Plaintiff an extension of time up to and including January 12, 2004. Also like
 
 Fer-dik,
 
 the instant case has been on this Court’s docket since 2002 and has consumed large amounts of this Court’s valuable time.
 

 Defendant also argues that the balance of interests served by Rule 41(b) strongly favor dismissing this case. In determining whether to dismiss a case for failure to comply with a court order, the district court must weigh five factors including: “(1) the public’s interest in expeditious resolution of litigation; (2) the court’s need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives”.
 
 Thompson v. Housing Auth.,
 
 782 F.2d 829, 831 (9th Cir.),
 
 cert. denied,
 
 479 U.S. 829, 107 S.Ct.
 
 *MCCCLXII
 
 112, 93 L.Ed.2d 60 (1986);
 
 Henderson v. Duncan,
 
 779 F.2d 1421, 1423 (9th Cir.1986).
 

 The first two factors, the public’s interest in expeditious resolution of litigation and the court’s need to manage its docket, counsel in favor of dismissal. The case has been on this Court’s docket for twenty-nine months and began in bankruptcy court. This Court’s docket and resources have been strained by repeated motions, requests for judicial notice, and requests for the court’s reconsideration of orders. Indeed, with only a brief glance at the history of this case, one can see that an expeditious resolution to this matter has not been achieved. Furthermore, Plaintiff filed another action in the Northern District of California based on the same or related set of facts as the instant case, which this Court recently learned has been ordered transferred to this Court.
 

 As to the third and fourth factors, the risk of prejudice to the defendants and the public policy favoring disposition of cases on their merits, respectively, Defendant argues that while the fourth factor generally counsels against dismissal, here Plaintiff has been given years to develop his theories, most of which have actually been adjudicated and dismissed on the merits. Furthermore, Defendant argues that the risk of prejudice to Defendant, should this case be allowed to continue, is extremely high. In support of its argument, Defendant directs this Court to
 
 O’Brien v. Sinatra,
 
 315 F.2d 637 (9th Cir.1963). In
 
 O’Brien,
 
 a pro se litigant alleging copyright infringement, sued Frank Sinatra in a series of frivolous complaints. The district court found that the allegations were so muddled that they did not satisfy the requirements of Rule 8 and granted Plaintiff leave to amend with explicit instructions to limit the complaint to one defendant and one allegedly infringed song. Plaintiff failed to comply with this instruction, and instead, filed an amended complaint containing at least 20 defendants and charged that each of them had conspired to infringe upon a long list of copyrights.
 
 Id.
 
 The district court dismissed the action pursuant to Rule 41(b), and the Ninth Circuit affirmed, noting that the plaintiff, in choosing to represent himself, was not the victim of any error or inadvertence of his attorney, could not complain that the court’s order was unclear, and received his day in court via the generous and patient consideration of the district court.
 
 Id.
 
 at 642. The Ninth Circuit found that the case had reached the point where exercise of the district court’s discretion to dismiss the action was proper to “foreclose [the plaintiff] from further harassing defendants with confused and confounding complaints.”
 
 Id.
 
 Defendant argues that, like the defendants in
 
 O’Brien,
 
 the injustice it has suffered is significant in that it, and now individual defendants in the Northern District litigation, have endured repetitious briefing of identical issues, distractions and expenses associated with filing responsive papers to Plaintiffs often unnecessary and harassing motions, and the duplicated expenses incurred as a result of simultaneous lawsuits in two different federal districts. Defendant argues this is precisely the prejudice that Rule 41(b) was designed to prevent, and states that its diligent research has uncovered no case with the level of extreme disregard for rules and orders as is found in the instant case.
 

 Like the plaintiff in
 
 O’Brien,
 
 Plaintiff here chose to represent himself and cannot possibly complain that this Court’s Order specifically instructing Plaintiff how to plead his SAC was unclear. Additionally, it appears Plaintiff had and possibly continues to have the advice of counsel, at least in part, as he claims attorney’s fees.
 
 [6]
 
 
 *MCCCLXIII
 
 Also like the plaintiff in
 
 O’Brien,
 
 Plaintiff received his day in court via the generous and patient consideration of this Court. As discussed in greater detail at pages 2-5
 
 swpra,
 
 the Order dismissed most of the claims presented in Plaintiffs FAC while at the same time provided Plaintiff with specific instruction on what Plaintiff should plead in his SAC in order to allow this case to continue. Despite the very clear instruction provided and the considerable amount of court effort put into the Order, Plaintiff chose not to comply with the Order. Furthermore, this Court’s resources have been significantly utilized over the past 29 months in Plaintiffs numerous motions to vacate and/or reconsider previous orders, for preliminary injunctions and restraining orders, for default judgments, and miscellaneous requests such as notifying the court of his intent to seek sanctions, most all of which have been denied by this Court either procedurally or on their merits. Thus, as can be seen, it cannot be said that Plaintiff has not received considerable attention from this Court.
 

 Finally, Defendant argues that the fifth factor, the availability of less drastic alternatives, does not require a court to exhaust alternative or lesser sanctions. Indeed, the Ninth Circuit has held that “the reasonable exploration of possible and meaningful alternatives is all that is required.”
 
 Anderson v. Air West, Inc.,
 
 542 F.2d 522 (9th Cir.1976);
 
 see also Morris v. Morgan Stanley,
 
 942 F.2d 648, 652 (9th Cir.1991). This Court’s Order granted Plaintiff leave to file his SAC, in accordance with the Order, no later than October 20, 2003. Plaintiff failed to file his SAC within this time period, and subsequently made a motion for an extension of time. Defendant adamantly objected, and while it would have been within this Court’s discretion to dismiss the action pursuant to Rule 41(b) for failure to comply with the Order, this Court instead granted Plaintiff an extension of time until January 12, 2004. In all, from September 18, 2003, when the Order was originally issued, to January 12, 2004 when Plaintiff ultimately filed his SAC, Plaintiff received 116 days within which to amend his complaint, when this Court originally granted Plaintiff 32 days. Thus, the case history reveals here that this Court
 
 has
 
 tried other options, most recently in granting the SAC filing deadline extension and giving Plaintiff specific parameters within which to form his SAC.
 

 Accordingly, this Court finds that it is well within its discretion to dismiss Plaintiffs SAC pursuant to Rule 41(b). However, this Court will, instead, analyze the claims presented in Plaintiffs SAC for their viability in connection with Defendant’s argument under Rule 12(b)(6) below.
 

 B. Dismissal for Failure to State a Claim (Rule 12(b)(6))
 

 Defendant argues that the SAC should be dismissed for failure to state a claim because Plaintiff lacks standing to pursue the claims presented in the SAC in federal court. In the opening paragraph of his SAC, Plaintiff asserts two causes of action, the Unfair Competition Law (“UCL”), under Cal. Bus. & Prof.Code § 17200, and the False Advertising Act (“FAA”), under Cal. Bus.
 
 &
 
 Prof.Code § 17500. He brings these causes of action (1) on his own behalf and (2) as private attorney general on behalf of unnamed citizens. While Plaintiff acknowledges his assertion of these claims, he now argues that his SAC also asserts a fraud claim in count 1 in compliance with the Order.
 

 
 *MCCCLXIV
 
 Rule 8(a)(2) requires a pleading to set forth “a short and plain statement of the claim showing that the pleader is entitled to relief.” Nowhere in count 1 does Plaintiff explicitly include a fraud claim under either the common law or Cal. Civ.Code § 1709. Instead, Plaintiff argues that the facts set forth in count 1 give Defendant fair notice of Plaintiffs fraud claim. Plaintiff cites
 
 Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) as demonstrating a “simplified pleading standard” and that the federal rules do not require a claimant to set out in detail the facts upon which he bases his claim, but rather, fair notice of a plaintiffs claims and the ground upon which those claims rest. However, this Court’s reading of these cases does not support Plaintiffs argument. In
 
 Swierkiewicz,
 
 the Court held that an employment discrimination plaintiff need not expressly plead a prima facie case of discrimination and found that the petitioner’s complaint was sufficient to survive respondent’s motion to dismiss. 534 U.S. at 515, 122 S.Ct. 992. The Court noted the fact that the petitioner set forth the relevant facts, and stated that he was fired in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. Furthermore, the Court specifically found that an employment discrimination claim was not subject to the heightened pleading standard of Rule 9. In
 
 Conley,
 
 the Court had to decide whether the plaintiffs stated sufficient facts to support their general allegations of discrimination. The Court found that pleading sufficient to state a claim, noting plaintiffs inclusion of the statute allegedly violated by defendants as well as an explicit discrimination claim.
 

 Here, Plaintiff did explicitly allege a violation of Cal. Bus. & Prof.Code §§ 17200 and 17500, but did not explicitly allege any other causes of action. The common thread between the case authority cited by Plaintiff is that the Court found the pleadings sufficient, in part, because both sets of plaintiffs cited particular statutes that the defendants allegedly violated, thereby setting forth the claims and the grounds upon which those claims rest as required by Rule 8(a)(2). Furthermore, the question presented in
 
 Conley
 
 is a different question than the one presented by Plaintiff here. In
 
 Conley,
 
 the Court had to decide whether the facts were sufficient to support the plaintiffs’ stated discrimination claim. Here, the question is whether the facts set forth in count 1 are sufficient to give Defendant notice of a fraud claim, which was not stated in the SAC. Thus, this Court’s reading of Plaintiffs case authority does not support Plaintiffs argument.
 

 Additionally, Plaintiffs argument is not consistent with the federal rules. Rule 9(b) requires that “in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.” Thus, if count 1 is to be read as setting forth a fraud claim, as Plaintiff argues, it must comply with the heightened pleading standard of Rule 9(b), not the notice pleading requirement of Rule 8(a)(2). While count 1 refers to “misrepresentation” and “fraudulent representations” on the part of Defendant, these references speak to Plaintiffs reliance on misrepresented or fraudulently provided information, which Plaintiff alleges prompted him to enter into a service contract. Plaintiff states in count 1 that “offer, reliance, acceptance, mutual asset, and consideration [were] present” and that “a contract was formed.” SAC at 5. Together these statements indicate that Plaintiff is making a breach of contract claim in count 1. This is substantiated by the first sentence of his SAC in which Plaintiff states “Plaintiff brings this case as an action in breach of contract.” SAC at 1. This
 
 *MCCCLXV
 
 Court’s reading of count 1 is that Plaintiff gave Defendant notice of a breach of contract claim. Count 1 does
 
 not
 
 pass the heightened pleading standard of Rule 9(b) for a fraud claim. Thus, this Court finds that the SAC consists
 
 only
 
 of Plaintiffs newly stated claims under Cal. Bus.
 
 &
 
 Prof.Code §§ 17200 and 17500.
 

 Having found that the SAC consists only of alleged violations of the UCL and the FAA brought by Plaintiff on his own behalf as well as private attorney general, this Court will now address Defendant’s arguments relating to those claims. Defendant first argues that Plaintiff lacks standing to bring his UCL and FAA claims as private attorney general in federal court. While Cal. Bus. & Prof. Code § 17204 provides that an action challenging wrongful business conduct may be brought “by any person acting for the interests of itself, its members or the general public,” Article III of the Constitution limits the jurisdiction of the federal courts to “cases and controversies.” The Court determined that under the “cases and controversies” standard of Article III, a plaintiff seeking relief in federal court must show (1) he has suffered an “injury in fact,” (2) that the injury is “fairly traceable” to the actions of the defendant, and (3) the injury will likely be redressed by a favorable decision.
 
 See Bennett v. Spear,
 
 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997);
 
 see also Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). According to the Ninth Circuit, a plaintiff seeking relief in federal court under California law must still comply with the Article III standing requirement set forth above, acknowledging that because of this requirement “a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.”
 
 Lee v. American National Insurance Co.,
 
 260 F.3d 997, 1001-002 (9th Cir.2001) (citations omitted). Thus, in order for Plaintiff to have standing in federal court, this Court must find that Plaintiff has standing for both the claims brought on his own behalf
 
 and
 
 the claims brought as a private attorney general. This Court must separately analyze these two standing issues.
 

 For Plaintiff to have standing to bring his claims as private attorney general, he must show that he personally suffered an injury as a result of Defendant’s conduct allegedly experienced by other citizens unknown to Plaintiff. Here, Plaintiff fails to make this requisite showing because he fails to plead facts showing this Court that the injuries allegedly suffered by other citizens actually affected Plaintiff and resulted in a cognizable injury to Plaintiff. Furthermore, this Court cannot see how injuries allegedly suffered by nameless strangers could have affected Plaintiff such as to result in an actual injury to Plaintiff. Accordingly, this Court finds that Plaintiff lacks standing to bring his claims as private attorney general in federal court. As such, the portion of Plaintiffs SAC asserting claims on behalf of unnamed citizens as private attorney general is dismissed.
 

 For Plaintiff to have standing to bring his claims on his own behalf, he must show that he personally suffered an injury that is traceable to Defendant’s actions, which will likely be redressed by a favorable decision in this Court. Plaintiff successfully demonstrates standing to bring this action on his own behalf. Plaintiff alleges that he suffered both actual damages as well as pain and suffering damages as a result of Defendant’s conduct actually experienced by Plaintiff. Also, because Plaintiff prays for money damages, a favorable decision by this Court could redress Plaintiffs injuries. Accordingly, this Court finds that Plaintiff has standing to
 
 *MCCCLXVI
 
 bring his UCL and FAA claims on his own behalf.
 

 However, Plaintiff must also plead sufficient damages authorizing this Court to exercise subject matter jurisdiction over this matter. Plaintiff asserts this Court has subject matter jurisdiction via § 1332 diversity jurisdiction, which requires a minimum amount in controversy of $75,000. Defendant argues that Plaintiffs prayer for pain and suffering damages is not an authorized form of relief for violations of the UCL and FAA. Eliminating this damage amount from Plaintiffs prayer leaves only Plaintiffs prayer for actual damages, and thus, Defendant argues Plaintiff cannot meet the amount in controversy requirement to confer diversity jurisdiction.
 

 According to the California Supreme Court, an alleged UCL violation does
 
 not
 
 provide for recovery of damages as a matter of law:
 

 A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices. It is not an all-purpose substitute for a tort or contract action. [Djamages are not available under section 17203.
 

 Cortez v. Purolator Air Filtration Products Co.,
 
 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000);
 
 see also Heller v. Norcal Mutual Ins. Co.,
 
 8 Cal.4th 30, 39, 32 Cal.Rptr.2d 200, 876 P.2d 999 (1994). Likewise, the- relevant statutes do not authorize recovery of damages by private individuals for alleged FAA violations.
 
 Chem v. Bank of America,
 
 15 Cal.3d 866, 875, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976). Thus, neither an alleged violation of the UCL or the FAA permit a recovery of damages, and instead limit the relief to injunctions and restitution. Here, the only money or property Plaintiff can claim was obtained from the plaintiff through unfair or unlawful business practices or false advertising, thus constituting the basis of a claim for restitution, are arguably the cost of the insurance plan, the additional activation fee paid, and the cost of the replacing damaged equipment not replaced by Defendant, such as the desktop battery charger. In his SAC, Plaintiff seeks actual damages “in the sum of approx, [sic] $600, including but not limited to the replacement cost for two telephones,
 
 [7]
 
 plus approx. $2,000 in increased medication” as well as pain and suffering in the amount of $75,000. SAC at 3, 6. Even if this Court were to find that Plaintiffs actual damages claimed of $600 are recoverable as restitution, Plaintiff would still fall substantially short of the $75,000 amount in controversy requirement for this Court to exercise diversity jurisdiction pursuant to § 1332 because Plaintiffs claim for costs of medication and pain and suffering damages is not an allowable form of damages for alleged violations of the UCL and FAA. Thus, while Plaintiff has standing to bring his UCL and FAA claims on his own behalf, he fails to plead sufficient damages within the authority of §§ 17200 and 17500 to confer diversity jurisdiction pursuant to § 1332. Accordingly, this Court finds that it lacks subject matter jurisdiction, and GRANTS Defendant’s motion for a dismissal of the entire action.
 

 IV. REQUEST FOR JUDICIAL NOTICE
 

 A. Defendant’s Request
 

 Defendant requests this Court take judicial notice of three documents: (1) Plain
 
 *MCCCLXVII
 
 tiffs first amended complaint filed in the Northern District of California, which Defendant proffers to demonstrate that Plaintiff seeks to re-litigate the personal jurisdiction issue dealt with in this Court’s September 18 Order, (2) Plaintiffs notice of intent to conduct discovery filed in the Northern District of California, which Defendant proffers to demonstrate that Plaintiff seeks to depose numerous individuals, including Judge Stiven, and (3) Order re: Defendants’ Motion for Protective Order issued in the Northern District of California which orders Plaintiff to cease his discovery tactics and show cause why Plaintiff should not be made to pay for Defendants’ costs incurred in obtaining the protective order.
 

 As discussed above, this Court finds that it lacks subject matter jurisdiction over this matter, and thus, it must be dismissed. Accordingly, this Court DENIES Defendant’s request for judicial notice, as moot.
 

 B. Plaintiff’s Request
 

 Plaintiff requests this Court take judicial notice of (1) a patent application covering Plaintiffs discovery of the pharmaceutical effectiveness of DHEA to treat the symptoms of ischemia, (2) several case authorities relating to Article III standing. This Court reviewed the document and the cases cited by Plaintiff and finds that the items are not material to the issues presented in the instant motions. Accordingly, this Court DENIES Plaintiffs two requests for judicial notice.
 

 IV. CONCLUSION
 

 Based on the above discussion, this Court (1) DENIES Plaintiffs motion for entry of default judgment [105-1], (2) GRANTS Defendant’s motion to dismiss [109-1], (3) DENIES Defendant’s request for judicial notice [111-1], and (4) DENIES Plaintiffs request for judicial notice [126-1] and [128-1]. Plaintiffs Second Amended Complaint [103-1] is DISMISSED for lack of subject matter jurisdiction, with prejudice as to any claims presented to this Court in Plaintiffs first amended complaint, thereby terminating this matter in this Court. While the case is terminated in this Court, the dismissal is without prejudice to the extent the new state law claims could be pursued in another court of competent jurisdiction.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Plaintiff's motion to amend sought to join several named individuals as defendants, but Judge Jones ruled that this Court does not have personal jurisdiction over the individual executive defendants.
 

 [2]
 

 . Judge Jones found that Sprint Spectrum L.P. had answered in Bankruptcy Court on behalf of itself and each of the “erroneously named defendants”.
 

 [3]
 

 . Plaintiff claims to have consulted an attorney in Palm Beach, Florida and an attorney in San Diego, though neither have billed Plaintiff as of yet.
 

 [4]
 

 . See detailed discussion at pages 1231-1322
 
 infra.
 

 [5]
 

 . According to this Court's docket, Defendant’s motion to dismiss was filed February 4, 2004, nunc pro tunc to February 2, 2004.
 

 [6]
 

 . Plaintiff seeks attorney's fees for "consulting services” provided by Richard Greenfield,
 
 *MCCCLXIII
 
 Esq. of Palm Beach, Florida and David Herring, Esq. of San Diego. Plaintiff has also represented to this Court that he himself had been enrolled in law school.
 

 [7]
 

 . In his motion for default judgment, Plaintiff asserts he suffered "actual damage in the sum of $450.80.”